**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| SCHLAM STONE & DOLAN LLP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-1318 (RDA/LRV) |
| | ) | |
| TRG GLOBAL CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. No. 65) (the "Motion"). In this collection action, Plaintiff Schlam Stone & Dolan LLP ("Schlam Stone") seeks to recover unpaid attorney's fees from Defendant TRG Global Corporation ("TRG"), a former client. Defendant has failed to defend itself in this matter. For the reasons that follow, the undersigned recommends that the Court **GRANT** the Motion and award judgment against Defendant in the amount of $195,843.19, not including applicable interest. The undersigned files this Report and Recommendation under 28 U.S.C. § 636(b)(1)(C). A copy of the Report and Recommendation will be provided to all interested parties.

I.    Factual Background

The following facts are established in the Complaint (Dkt. No. 1).[1] In this diversity action for past-due attorney's fees, Schlam Stone is a law firm that formerly represented TRG, a consulting group. (Dkt. No. 1 ¶ 2.) On September 7, 2022, after Schlam Stone and TRG's

---

[1] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.") (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

Chairperson, Donna Roberson, negotiated rates and the scope of representation, Schlam Stone sent a retainer letter to Ms. Roberson for her signature on behalf of TRG. (*Id.* ¶¶ 3, 13, 20-22; *see also* Dkt. No. 1-1 ("Retainer Letter").) The next day, Ms. Roberson returned the letter to Schlam Stone in an email with the subject "Signed." (*Id.* ¶ 23.) The email, however, did not contain a signed copy of the Retainer Letter, and Ms. Roberson never returned a signed agreement to Schlam Stone. (*Id.* ¶¶ 23, 25; *see also* Dkt. No. 1-3 (Ms. Roberson's September 8, 2022 Email to Schlam Stone).) Nevertheless, on September 12, 2022, TRG paid the retainer amount specified under the Retainer Letter. (*Id.* ¶ 18.) On October 27, 2022, Schlam Stone filed a collections action on TRG's behalf against a former TRG client, CodeMantra, in the Eastern District of Virginia. (*Id.* ¶ 3; *see also TRG Global Corporation v. CodeMantra U.S. LLC*, No. 1:22-cv-01219.) Over the following weeks, both parties continued to act as if the Retainer Letter had been fully executed; Schlam Stone represented TRG in the *CodeMantra* litigation and TRG paid certain Schlam Stone invoices. (*Id.* ¶¶ 25, 48.)

At all times during the *CodeMantra* litigation, Schlam Stone communicated exclusively with Ms. Roberson. (*Id.* ¶¶ 2, 14, 15.) Schlam Stone characterizes Ms. Roberson as a difficult client who threatened to bring frivolous disciplinary charges against Schlam Stone and who failed to meet certain litigation obligations. (*Id.* ¶¶ 3–5, 16, 32–36, 45–48.) For example, Ms. Roberson "refused to comply with the most fundamental obligations of discovery, despite repeated admonitions from counsel," including not granting Schlam Stone access to her documents in a format acceptable for production and refusing to verify interrogatory responses for weeks. (*Id.* ¶ 34.) Additionally, Ms. Roberson "left her deposition and refused to return, despite instructions of her counsel to do so, necessitating a motion to compel and for sanctions." (*Id.* ¶¶ 3, 38.) Ms. Roberson eventually sat for a remote deposition but she departed early and disregarded Schlam

Stone's repeated instructions to rejoin the deposition.  (*Id.*   ¶¶ 37-38.)   As a result, Defendant moved to compel Ms. Roberson's deposition and for sanctions.  (*Id.* ¶ 39; *see also CodeMantra*, Dkt. No. 39 (Motion to Compel and for Sanctions).)  The Court ultimately denied the Motion to Compel and for Sanctions as moot because the parties reached a settlement on May 26, 2023.  (Dkt. No. 1 ¶ 41; *see also CodeMantra*, Dkt. No. 74 (May 26, 2023 Order).)

After the successful May 26, 2023 settlement conference, CodeMantra's counsel submitted letters to the Court on June 1 and June 2, 2023 regarding Plaintiff's alleged refusal to comply with the material terms of settlement agreed to at the settlement conference.  (*CodeMantra*, Dkt. Nos. 77, 78.)  On June 5, 2023, Schlam Stone moved to withdraw its appearance on behalf of TRG.[2] (Dkt. No. 1 ¶ 42; *see also CodeMantra*, Dkt. No. 81.)  That same day, CodeMantra's counsel renewed its motion for sanctions.  (*CodeMantra*, Dkt. No. 80.)  On June 9, 2023, the Magistrate Judge in the *CodeMantra* action granted CodeMantra's motion to enforce the settlement agreement, denied CodeMantra's renewed motion for sanctions, and denied Schlam Stone's motion to withdraw as counsel.  (*CodeMantra*, Dkt. No. 93.)  Plaintiff then filed a stipulation of voluntary dismissal, (*CodeMantra*, Dkt. No. 95), which the Court granted (*CodeMantra*, Dkt. No. 97).   In sum, Schlam Stone represented TRG from September 2022 to July 6, 2023 in the *CodeMantra* action, from before the Complaint was filed until the Court entered the stipulation of dismissal.

TRG made only partial payments to Schlam Stone in connection with the *CodeMantra* action.  On or about September 12, 2022, TRG sent Schlam Stone the $12,500 retainer amount required by the Retainer Letter, and on April 11, 2023, TRG paid Schlam Stone an additional

---

[2] Schlam Stone states that it contemplated a motion to withdraw earlier in the litigation but was advised by local counsel that this Court would likely deny such a motion when the trial was less than one month away. (Dkt. No. 1 ¶ 40.)

3

$4,690.50.  (Dkt. No. 1 ¶¶ 18, 24, 48.)  TRG did not pay any subsequent Schlam Stone invoices. (*Id.* ¶¶ 48, 50.)  Between September 2022 and August 10, 2023, Schlam Stone invoiced TRG by texting and emailing Ms. Roberson, in accordance with the Retainer Letter.  (*Id.* ¶¶ 5, 49, 52–65.) If TRG had any objections to Schlam Stone invoices, the Retainer Letter required TRG to "assert a written objection within thirty (30) days of the date of a given statement" or else, that statement would be deemed acceptable as rendered.  (*Id.* ¶ 26; *see also* Dkt. No. 1-1 at 1.)  Ms. Roberson, as the agent for TRG, never objected to or disputed the amounts due under the five invoices dated April 11, 2023, May 8, 2023, June 1, 2023, July 12, 2023, and August 10, 2023..  (*Id.* ¶¶ 5, 27, 75, 76.)

On June 1, 2023, Schlam Stone filed a notice with this Court "[p]ursuant to Code of Virginia § 54.1-3932 and New York Judiciary Law § 475 . . . assert[ing] the statutory right to claim attorney's liens on the proceeds from TRG's claims." (*CodeMantra*, Dkt. No. 76).  In the Complaint in this action, Schlam Stone alleges that as of August 31, 2023, TRG owes an outstanding balance of $128,080.96, not including interest.  (*Id.* ¶ 77.)  Because Schlam Stone is seeking more than $50,000.00, the arbitration clause in the Retainer Letter is inapplicable.  (*Id.* ¶ 29.)

## II.    Procedural Background

On September 6, 2023, Schlam Stone filed this action against TRG in the United States District Court for the Southern District of New York, asserting two causes of action under New York law: (i) account stated and (ii) breach of contact.  (Dkt. No. 1 ¶¶ 72–84.)  On September 12, 2023, Schlam Stone served TRG with the Complaint and Summons.  (Dkt. No. 12.)  On December 19, 2023, after four extension requests (Dkt. No. 14, 16, 18, 20), Defendant filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue, (Dkt. No. 23).  On July 15, 2024, the Southern District of New York granted that motion and transferred the action to

this District.  (Dkt. No. 34.)  Upon transfer, this case was assigned to District Judge Alston and the undersigned Magistrate Judge.  On July 31, 2024, Judge Alston ordered Defendant to file an answer or other responsive pleading by August 21, 2024.  (Dkt. No. 36.)  On August 19, 2024, Defendant filed a motion requesting an extension to September 18, 2024, (Dkt. No. 41), which the Court granted, (Dkt. No. 43).  Rather than file a responsive pleading on September 18, 2024, Defendant filed yet another motion for an extension—Defendant's sixth extension request— asking for another thirty (30) days.  (Dkt. No. 47.)  The Court denied Defendant's sixth extension request.  (Dkt. No. 56.)

In parallel, Defendant's counsel filed a motion to withdraw as counsel, (Dkt. No. 40), which the Court denied because counsel had not demonstrated good cause for withdrawal under Virginia Rule of Professional Conduct 1.16, (Dkt. No. 44).  Defendant then filed a second motion to withdraw, (Dkt. No. 47), and at the Court's direction, a confidential memorandum in support (Dkt. No. 50).  The Court granted defense counsel's second motion to withdraw and directed Defendant to secure substitute counsel on or before October 16, 2024 because a corporation may only appear through counsel in a federal judicial proceeding.  (Dkt. No. 56.)  After Defendant failed to secure counsel, Plaintiff requested the Clerk enter default against Defendant.  (Dkt. No. 59.)  Default was entered on December 11, 2024.  (Dkt. No. 61.)  That same day, the District Judge ordered Plaintiff to file a motion for default judgment, any supporting materials, and a notice or waiver of hearing.  (Dkt. No. 60.)  When Plaintiff did not comply with that order, the District Judge issued a show cause order on December 10, 2025 directing Plaintiff to explain why the action should not be dismissed for failure to prosecute.  (Dkt. No. 62.)  After considering Plaintiff's explanation, (Dkt. No. 63), the District Judge granted Plaintiff another opportunity to file a motion for default judgment, with a January 15, 2026 filing deadline, (Dkt. No. 64).  On January 15, 2026,

Plaintiff filed the Motion for Default Judgment (Dkt. No. 65), a memorandum in support (Dkt. No. 65-1), and several exhibits in support (Dkt. No. 65-2–65-17).  Plaintiff also noticed a February 6, 2026 hearing on the Motion, (Dkt.  No. 66), and mailed a copy of the default judgment materials to Defendant's principal place of business, (Dkt. No. 65-18).  At the February 6, 2026 hearing, Plaintiff's counsel presented argument and no one appeared on behalf of Defendant.   (Dkt. No. 67 (February 6, 2026 Minute Entry).)  The Motion is now ripe for consideration.

 III.    Proposed Findings and Recommendations

### A.  Jurisdiction and Venue

As a preliminary matter, the Court must find that it has subject-matter jurisdiction over the claims, personal jurisdiction over the parties, and that this Court is a proper venue.

This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy, exclusive of interest and attorneys' fees, exceeds $75,000.00.  Plaintiff Schlam Stone is a limited liability partnership organized under New York law, with its principal place of business in New York, New York. (Dkt. No. 1 ¶ 8.)  Each of Schlam Stone's limited partners is a citizen of New York or New Jersey. (*Id.* at 8.)  Defendant TRG is a Florida corporation, (*see id.* ¶ 9), with its principal place of business in Arlington, Virginia (Dkt. No. 26 at 2; Dkt. No. 31 at 3).

This Court has general personal jurisdiction over TRG because it is "at home" in this District since its principal place of business is 710 12th Street, South, Arlington, Virginia.  (*See* Dkt. No. 25, ¶ 4; *see also Daimler AF v. Bauman*, 571 U.S. 117, 137 (2014).)  Likewise, this is the proper venue because defendant resides in this District.  (*Id.*; *see also* 28 U.S.C. § 1391 (b)(1).)

### B.  Service of Process

Schlam Stone served the Complaint and Summons on TRG's authorized agent in Florida on September 12, 2023, (Dkt. No. 12 (Affidavit of Service); *see also* Dkt. No. 65-4 (Florida

Division of Corporations Record)), and on TRG's authorized agent in Virginia on September 14, 2023, (Dkt. No. 13). The Court therefore finds that there was sufficient service of process. *See* Fed. R. Civ. P. 4 (h)(1)(B); VA Code Ann. § 8.01-301(1) (permitting service on officer, director or registered agent); Fla. Stat. Ann. § 48.081(2) ("A domestic corporation or registered foreign corporation may be served with process required or authorized by law by service on its registered agent designated by the corporation.").

### C. Grounds for Entry of Default

As described herein, after this action was transferred from the Southern District of New York to the Eastern District of Virginia, the District Judge ordered Defendant to file an answer or other responsive pleading by August 21, 2024. (Dkt. No. 36.) Following several extension requests and the withdrawal of defense counsel, the Court directed Defendant to secure substitute counsel on or before October 16, 2024 because a corporation may only appear through counsel in a federal judicial proceeding. (Dkt. No. 56.) After Defendant failed to secure counsel, the Clerk entered default against Defendant on December 11, 2024. (Dkt. No. 61.) That same day, the District Judge ordered Plaintiff to file a motion for default judgment, any supporting materials, and a notice or waiver of hearing. (Dkt. No. 60.) Plaintiff did not do so. The District Judge then issued a show cause order on December 10, 2025 directing Plaintiff to explain why the action should not be dismissed for failure to prosecute. (Dkt. No. 62.) Plaintiff filed a response describing competing obligations and requested a brief extension to file a motion for default judgment. (Dkt. No. 63.) The District Judge granted Plaintiff another opportunity to file a motion for default judgment, with a January 15, 2026 filing deadline. (Dkt. No. 64). On January 15, 2026, Plaintiff filed the Motion for Default Judgment (Dkt. No. 65), a memorandum in support (Dkt. No. 65-1), and several exhibits in support (Dkt. No. 65-2–65-17).

### D. Liability

A defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), but conclusions of law or "allegations regarding liability that are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014). Before entering default judgment, therefore, this Court must evaluate Plaintiff's Complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the Complaint states a claim upon which relief can be granted. *JTH Tax, Inc.*, 8 F. Supp. 3d at 736. To meet this standard, the Complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the Court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

The Complaint asserts two claims under New York law:[3] (1) account stated; and (2) breach of contract. (Dkt. No. 1.) During the February 6, 2026 hearing on the Motion for Default Judgment, the undersigned asked Plaintiff's counsel several questions to clarify the scope of liability and damages. In response to those questions, Plaintiff's counsel stated that the damages sought pursuant to the two claims were duplicative and that the availability of attorney's fees was tied to the breach of contract claim only. Where "Plaintiff's account stated claim arises from the same facts as its breach of contract claim," and Plaintiff "does not seek distinct damages under these two causes of action . . . Plaintiff is entitled to a default judgment on the breach of contract

---

[3] The choice of law provision in the Retainer Letter specifies that the agreement shall be governed by New York law. (Dkt. No. 9-1 at 3).

claim, [but] the accounted stated claim is precluded as duplicative." *Arch Specialty Ins. Co. v. F-1 Am. Marble & Tile Corp.*, No. 19-cv-3445, 2020 WL 13882816, at *3 (E.D.N.Y. Sept. 15, 2020); *see also Ellen Tracy Holdings LLC v. Daytona Apparel Grp. LLC*, No. 23-cv-2957, 2023 WL 3851083, at *2 (S.D.N.Y. June 6, 2023) (denying a damages award for accounts stated claim that was duplicative of breach of contract claim); *Voice Tele Servs. Inc. v. Blu-Dot Telecoms Ltd.*, No. 19-cv-5252, 2019 WL 6497507, at *3 n. 4 (S.D.N.Y. Dec. 2, 2019) (same); *NTT Am. Inc. v. Tennessee Data Sys., LLC*, No. 17-cv-08274, 2018 WL 5493088, at *4 (S.D.N.Y. Oct. 11, 2018) (same). Accordingly, the Court needs only to reach Plaintiff's breach of contract claim.[4]

To prevail on a breach of contract claim under New York law, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Roshan v. Cap. One Fin. Corp.*, No. 25-cv-2653, 2026 WL 469681, at *4 (E.D.N.Y. Feb. 19, 2026). "Evidence of a signed written agreement between the parties, along with invoices reflecting the defendant's unpaid balance, is sufficient to establish a *prima facie* case for breach of contract." *Ellenoff Grossman & Schole, LLP v. Rosenberg*, No. 13-cv-7022, 2015 WL 1938138, at *2 (S.D.N.Y. Apr. 16, 2015) (citing *AT & T Corp. v. Publ'g Concepts L.P.*, No. 08-cv-7658, 2010 WL 1191380, at *3 (S.D.N.Y. Mar. 29, 2010)).

---

[4] For completeness, the undersigned finds that Plaintiff could have prevailed on the accounts stated claim. "Under federal and New York law an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." *In re Rockefeller Ctr. Props.*, 266 B.R. 52, 57 (S.D.N.Y. 2001) (quoting *Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 96 Civ. 9469, 1999 WL 191527, at *17 (S.D.N.Y. Apr.7, 1999)). "The agreement may be express, or it may be implied." *Yiwu Lizhisha Accessories Co. v. Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018) (internal citations omitted). To prevail on an account stated claim, a plaintiff must establish three elements: (1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated.'" *See id.* "The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *Id.* (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F.Supp.2d 395, 411 (S.D.N.Y. 2009)). Here, Defendant received invoices from Plaintiff pursuant to the Retainer Letter and did not object to the invoices.

Plaintiff filed a copy of the Retainer Letter to establish the existence of an agreement as well as the parties' obligations thereunder, (Dkt. No. 10); copies of unpaid invoices to establish breach and damages, (Dkt. Nos. 1-7, 1-8, 1-9, 1-10, 1-11); and evidence that Plaintiff ably represented TRG in the related *CodeMantra* legal proceedings, (*see* Dkt. No. 1 ¶ 44 (citing Dkt. No. 1-5 at 8) ("And having conducted the settlement conference, what I can say to you is, all the lawyers in this case did an outstanding job.  Every lawyer who is representing their clients did so professionally and thoroughly and advocated for their clients in an absolutely outstanding way, and that goes for both parties, and sometimes, clearly, under difficult circumstances.").)

The only wrinkle is that TRG never signed the Retainer Letter.  (Dkt. No. 1 ¶¶ 23, 25; *see also* Dkt. No. 1-3 (Ms. Roberson's September 8, 2022 Email to Schlam Stone).)  Where there is an unexecuted agreement, "an objective observer would look to see whether the non-signatory to an unsigned but otherwise valid agreement proceeded pursuant to its terms and, if so, would make the inference that the non-signatory was agreeing to the unsigned agreement by virtue of its performance."  *HK Kolmar USA, LLC v. Wormser Corp.*, No. 24-cv-9144, 2025 WL 3648736, at *6 (S.D.N.Y. Dec. 17, 2025).  The record reflects that both parties continued to act as if the Retainer Letter had been fully executed.  Specifically, Schlam Stone represented TRG in the *CodeMantra* litigation from October 27, 2022 to June 20, 2023, TRG paid the $12,500 retainer payment, and TRG paid Plaintiff an additional $4,690.50 on or about April 11, 2023.  (Dkt. No. 1 ¶¶ 25, 48.)  On that record, the undersigned finds that there was an enforceable contract, TRG breached the contract by failing to pay the amounts due under Plaintiff's invoices, and Defendant is therefore liable for breach of contract under New York law (Count II).

10

**E. Requested Relief**

Pursuant to the Motion for Default Judgment, Plaintiff requests: (1) the past-due fees under the five invoices, (2) interest at the rate provided in the Retainer Letter, and (3) attorney's fees. (Dkt. No. 65-1 at 20.)  Each issue is considered in turn.

   *1. Past-Due Fees*

Plaintiff requests $128,080.96[5] for unpaid fees pursuant to certain invoices.  Under the Retainer Letter, Plaintiff's "statements are payable in full within 30 days of receipt." (Dkt. No. 1-1 at 1–2.)  Within 30 days of receipt, Plaintiff failed to pay five invoices dated April 11, 2023 ($23,324.63), May 8, 2023 ($38,301.69), June 1, 2023 ($58,046.89), July 12, 2023 ($8,234.78), and August 10, 2023 ($172.97).  (Dkt. Nos. 1-7, 1-8, 1-9, 1-10, 1-11).  Each of those invoices reflect discounted fees.  (Dkt. No. 1 ¶ 17.)  Specifically, Plaintiff charged TRG the following discounted rates: (i) $500 per hour for partners, instead of the typical rate of $695 to $925 per hour; (ii) $400 per hour for counsel, instead of the typical rate of $675 per hour; (iii) $350 per hour for associates, instead of the typical rate of $645 per hour; and (iv) $195 per hour for paralegals, instead of the typical rate of $235 per hour.[6]  (*Id.*)  Given the express language in the Retainer Letter and TRG's failure to pay the invoices, the undersigned finds that Plaintiff can recover $128,080.96 in unpaid fees.

---

[5] Plaintiff's memorandum in support of the Motion for Default Judgment (Dkt. No. 65-1) and Jeffrey M. Eilender's declaration (Dkt. No. 65-2), are internally inconsistent, requesting $128,080.96 and $128,000.54 as the amount due under the invoices.  Plaintiff also mistakenly asserts that the invoice dated August 10, 2023 requests "$153.47 for work and disbursements during July" when the true amount reflected on that invoice is $172.97.  (Dkt. No. 1-11.) Based on an independent review of the invoices at issue and the full record, the undersigned finds that $128,080.96 is the accurate overdue amount.

[6] Although not necessary to recover damages, the undersigned finds that Plaintiff's invoices and the billing therein is reasonable.  Plaintiff argues that its "bills were high relative to the amount in controversy and to the ultimate settlement because each task took five if not ten times longer than it should have as Roberson would either not cooperate at all or would pretend not to remember what she had been told to do or would repeatedly contradict herself and the instructions that she gave the firm's attorneys." (Dkt. No. 1 ¶ 45.)  The well-pleaded allegations in the Complaint and the record in the *CodeMantra* litigation establish that TRG's conduct resulted in the need for additional motions practice and lengthier proceedings. (*See also* Dkt. No. 65-15 (Barnsback Decl.).)

*2. Interest*

Plaintiff also requests $29,752.22 in interest, "plus per diem Interest for each day after January 15, 2026, until Judgment is entered, in the amount of $31.56." (Dkt. No. 65-1 at 20.) Under the Retainer Letter, Plaintiff's "statements are payable in full within 30 days of receipt; charges that are unpaid after 30 days will incur a 9% annual interest rate." (Dkt. No. 1-1 at 1–2.) Plaintiff submitted a chart titled "Interest Rate Calculation Outstanding Invoices" that reflects the interest which had accrued as of September 1, 2023. (Dkt. No. 1-12.) Although Plaintiff did not submit more recent calculations, the undersigned finds that as of January 15, 2026, applying the 9% annual simple interest rate, the interest accrued as follows:

| Invoice Date | Amount Invoiced | Interest Begins to Accrue | Days Outstanding as of Jan. 15, 2026 | Total Interest as of Jan. 15, 2026 |
|---|---|---|---|---|
| 04/11/2023 | $23,324.63 | 05/11/2023 | 980 | $5,638.17 |
| 05/08/2023 | $38,301.69 | 06/07/2023 | 953 | $8,999.59 |
| 06/01/2023 | $58,046.89 | 07/01/2023 | 929 | $13,303.87 |
| 07/12/2023 | $8,234.78 | 08/11/2023 | 888 | $1,803.25 |
| 08/10/2023 | $172.97 | 09/09/2023 | 859 | $36.62 |
| | | | | **$29,781.50** |

The undersigned further finds that the appropriate per diem interest rate is $31.58 (i.e., applying the 9% annual interest rate to the total sum of the amounts invoiced).[7]  Accordingly, the undersigned recommends awarding $29,781.50 in accrued interest as of January 15, 2026, with an additional $31.58 in interest for each day thereafter until judgment is entered.

*3. Attorney's Fees*

Plaintiff requests $67,762.23 for attorneys' fees and costs.  The Retainer Letter provides that if Schlam Stone is:

---

[7] The undersigned's independent calculations differ slightly from Plaintiff's calculations, likely because Plaintiff incorrectly asserted that the invoice dated August 10, 2023 requests "$153.47 for work and disbursements during July" when the true amount reflected on that invoice is $172.97.  (Dkt. No. 1-11.)

required to use collection efforts to collect any unpaid portions of [its] invoices, TRG agrees that the prevailing party will obtain its reasonable fees and costs in any such collection action, as well as its reasonable fees and costs in litigating any dispute over the amount of fees and expenses to be awarded as part of this fee shifting (i.e., fees on fees), and that to the extent we appear *pro se*, we will be able to collect the value of the time we expended as measured by our hourly rates then in effect in litigating any such collection action.

(Dkt. No. 1-1 at 2–3.)  Accordingly, Plaintiff, which was represented by attorneys from Plaintiff (a law firm), can recover the attorneys' fees expended in this action.  *See S. Bank & Tr. Co. v. Pride Grp., LLC*, No. 14-cv-255, 2015 WL 410726, at *9 (E.D. Va. Jan. 28, 2015) (noting the award of attorneys' fees is appropriate where the agreements provided that the defendants would pay the fees and costs in any enforcement action).

In calculating attorney's fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."  *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).  The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. (citing *Barber v. Kimbrell's Inc*., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

In support of its request for attorney's fees and costs, Plaintiff submitted the Declaration of Jeffrey M. Eilender, Co-Managing Partner of Schlam Stone & Dolan LLP,  which describes the attorney's fees and costs incurred in this action.  (Dkt. No. 65-2 ¶¶ 69–80.)  Applying a lodestar

13

analysis, the undersigned finds that Plaintiff's request is reasonable and should be granted. *See Airlines Reporting Corp. v. Cartagena Travel and Tours, Inc.*, 2012 WL 13019066, at *11 (E.D. Va. Aug. 3, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the … reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate … [w]hen the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Mr. Eilender, along with Samuel Butt, Joshua Wurtzel, and Paul S. Stretton, performed work at rates of $800 per hour for Mr. Eilender, $750 per hour for Mr. Butt, $500 per hour for Mr. Wurtzel, $400 per hour for Mr. Stretton, $195 per hour for paralegals, and $195 per hour for an "IT Manager."[8] (Dkt. No. 65-2 ¶¶ 69–74.) Plaintiff also engaged John J. Rigby as local counsel and paid him a total of $5,895.00, based on Rigby's discounted rate of $400 per hour. (*Id.* ¶ 75.) Additionally, Plaintiff paid Michael Barnsback $5,395 "to opine as an expert on the reasonableness of [Plaintiff's] fees." (*Id.* ¶ 76.) In support of the reasonableness of these hourly rates, Mr. Eilender offers his credentials, the credentials of the other attorneys named herein, and submits that based on his review of attorney's fees petitions before this Court, the hourly rates are reasonable. (*Id.* ¶ 80.) Further, Mr. Barnsback's declaration compares the rates charged in this action to the "appropriate ranges of hourly rates in Norther Virginia based on years of experience" to conclude that the rates charged for this action are reasonable. (Dkt. No. 65-15 ¶¶ 16–23.)

On that record, the undersigned finds Schlam Stone's hourly rates to be reasonable when considering the totality of circumstances, including the nature of the case, the transfer from the Southern District of New York to this Court, counsel's experience, and rates established for

---

[8] Mr. Eilender's declaration attaches as Exhibits 5 to 12, invoices "which show the work performed, the time spent, and the rates for each timekeeper, which rates are based on each timekeeper's level of experience, ability, and reputation." (Dkt. No. 65-2.)

similarly positioned counsel and matters in this District. As for the number of hours dedicated to this matter, the undersigned further finds that no adjustment should be applied. Accordingly, the undersigned recommends finding that the lodestar fees amount $65,858.75 is reasonable, need not be further adjusted, and should be awarded to Plaintiff. (*See* Dkt. Nos. 65-7–65-14 (Exhibits 5–12), Dkt. No. 65-17.)

As for costs, Plaintiff seeks recovery of $1,903.48 in costs, resulting from court filing fees, process server fees, and related legal research and Pacer fees. (Dkt. Nos. 65-7–65-14 (Exhibits 5–12).) The undersigned finds that these costs are reasonable and necessary to this action and should be awarded to Plaintiff.

IV.   Recommendations

For the reasons stated above, the undersigned recommends that the Court:

- **GRANT** Plaintiff's Motion for Default Judgment (Dkt. No. 65).

- **ENTER** judgment in favor of Plaintiff and against Defendant on Count II, as follows:

    o  The past-due fees for the *CodeMantra* litigation: $128,080.96;

    o  Interest for the *CodeMantra* litigation with $29,781.50 in accrued interest as of January 15, 2026, with an additional $31.58 in interest for each day thereafter until judgment is entered; and

    o  Attorney's Fees and Costs for this Collection Action: $67,762.23.

V.    Notice

The parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to timely object waives appellate review of the substance of this Report and Recommendation and any judgment or decision based on it.

**ENTERED** this 12th day of May, 2026.

_Lindsey R. Vaala_
Lindsey R. Vaala
United States Magistrate Judge

Alexandria, Virginia

16